## Main vs. Bell and another.

(1–3) ATTACHMENT. (1) *When traverse to be tried.* (2) *Judgment in suit, before trial of traverse, effect of.* (3) *Rights of sheriff as to attached property, against receiptors.* (4) *Contract of sale of chattels.* (5) *What errors will not reverse.*

1. It is the intention of the statute (R. S., ch. 130, secs. 23–28), that the issue raised by the traverse to an attachment shall be tried *before* judgment is rendered in the principal suit.

2. Whether a judgment for the attachment plaintiff, taken before the trial of such issue, is irregular, and whether the irregularity (if any) can be reached otherwise than by a direct proceeding to reverse it, not decided here.

3. Even if the judgment is void, the writ of attachment remains in force; and the right of the sheriff to the possession of the attached property, and to demand such possession from receiptors thereof, and, in case of their refusal to deliver it, to recover the value of his interest in it, remains unaffected.

4. In an attachment suit against C., it appeared that before the attachment was executed, but on the same day, C. negotiated with A. for a sale to the latter of wheat sufficient in value to pay a note of C. in his hands. It was a material question in this case, whether, when the attachment was levied, C. was still the owner of said wheat. *Held*, that if the agreement between C. and A. was, that C. should keep the wheat in his possession, and clean and market enough of it to pay A. the amount of said note, and should pay the same from the moneys so obtained, the contract was not one of sale, and the title remained in C.

5. The proposition last recited was given the jury. It appears, however, that there was no evidence of any such contract *between C. and A.;* but there was evidence from which the jury might have found that certain agreements between C. and A., and A. and B., and B. and C., were all entered into at one time, so as to form one transaction, and constituted a contract *between C. and B.* of the character above stated. *Held*, that the error could not mislead the jury to C.'s prejudice, and is no ground for reversal.

APPEAL from the Circuit Court for *Dane* County.

This is an action by the sheriff, against the receiptors of property seized by him by virtue of a writ of attachment issued

in an action then pending in the circuit court, in which one Ellen C. Cook was plaintiff, and Stephen Crane was defendant. The cause has before been in this court, on appeal from a judgment against these defendants, and is reported in 27 Wis., 517. It was there held that the defendants should be allowed to show that the property in controversy, which they had surrendered to Crane, the defendant in the attachment suit, was exempt by law from seizure on attachment. Whether it was so exempt was the principal question litigated on the last trial of the action.

In the original action of *Cook v. Crane*, the defendant duly traversed the affidavit upon which the writ of attachment was issued ; and it is admitted that the issue made by such traverse has not been tried. Final judgment for the plaintiff was rendered in such original action before this action was commenced.

The testimony, and the instructions given by the court to the jury, will be found sufficiently stated in the opinion. The plaintiff had a verdict for $119.83 ; and from the judgment entered thereon, the defendants have appealed to this court.

*Carpenter & Chase*, for appellants, contended, 1. That the power of the attachment to pass the property to the plaintiff was suspended until the issue formed to try the right to take it in the first instance, should be tried and found in the affirmative. R. S., ch. 130, secs. 23 et seq. In that issue the burden of proof was upon the attachment plaintiff, by the statute. The case was regularly noticed for trial; and upon the attachment plaintiff's failing to offer proof to sustain the attachment, the court should have dissolved and discharged it. Yet Mrs. Cook now asks that by virtue of the attachment, her right to which remains undetermined, she shall have the property on her execution. 2. That the evidence in this action shows that after the attachment defendant had made the various sales of grain proven, the remainder was exempt from seizure on attachment or execution. 3. That the instruction given as to the effect of a hypothetical agreement between the attachment defendant and one Adams was error, because, even if correct

in law, there was no evidence to support it. 20 Wis., 347. 4. That if the plaintiff questioned Adams' title to the bin of wheat, he should have attached it, and tested his right, but he cannot compel Crane to take his exemption from that bin or go without; nor can he compel us in this suit to try Adams' title to that bin of wheat.

*Gill & Foote*, for respondent:

Where the sheriff leaves property, attached by him, in the hands of a receiptor, this creates a contract of bailment; and it is the bailee's duty to deliver the property to the sheriff *upon demand*, even where there is no express agreement to that effect. Drake on Attachment, sec. 344; Story on Bailments, §§ 124, 125; 23 Wend., 606; 16 id., 335; 3 Hill, 215. The only defense that a receiptor can interpose in an action by the sheriff against him for not redelivering the property is, that the sheriff is not liable to the attachment plaintiff, as where the property was not subject to attachment, or the attachment has been dissolved, or the like. The only cases in which a sheriff may release property once bound by an attachment are: 1. Where defendant has given an undertaking for the purpose. 2. Where, upon trial of the traverse issue, there is a finding in in defendant's favor. 3. Where defendant in the attachment suit has judgment in his favor. R. S., ch. 130, secs. 22, 26, 29. There is no law which declares that an attachment is dissolved, or its lien lost, unless the traverse issue is tried within a certain time. Even if our judgment in the attachment suit was a nullity, because the traverse issue was not tried, the lien of the attachment remains. It creates a lien which nothing short of its dissolution can destroy. Drake, sec. 224, and cases there cited. But that judgment cannot be impeached in this collateral manner. It is not merely *prima facie* but *conclusive* evidence of the regularity of all proceedings in that suit. Greenl. Ev., sec. 19. These defendants cannot impeach that judgment (*Brown v. Atwell*, 31 Me., 351); or show informality or irregularity in the attachment (*Drew v. Livermore*, 40 Me.,

Main vs. Bell and another.

266); nor have they any thing to do with the question whether the attachment plaintiff was entitled to judgment. Drake, sec. 185; *Walker v. Woods*, 15 Cal., 66; *Mamlock v. White*, 20 id., 598.

LYON, J.   I. The first question is, how are the rights of the parties affected by the fact that the issue made by the defendant's traverse of the affidavit for an attachment in the case of *Cook v. Crane*, has never been tried?

The statute concerning the trial of such issue contains provisions which render it clear that the legislature intended that the same should be tried before the principal action. R. S., ch. 130, secs. 23 to 28, inclusive.   Hence it may have been, and probably was, irregular, to take judgment in the principal action before such issue was disposed of.   But it does not necessarily follow therefrom that the judgment can be successfully impeached in this action.   It may be that the irregularity can only be reached by a direct proceeding to reverse the judgment.   But whether the judgment be valid or void seems quite immaterial in this action.   For if the judgment is absolutely void, the writ of attachment is valid, and the issue made by the traverse remains for trial.   The right of the sheriff to the property in controversy does not depend upon the judgment, at all, but upon the attachment.   He could have demanded it the next hour after the receipt was given, and, upon failure of the defendants to deliver the same, his right of action for the value of the property, not exempt, would have been perfect.   The position of the counsel for the defendants, that the traverse suspended the power of the attachment to vest in the sheriff the right to the possession of the property attached, is untenable. At most, the traverse only suspended the right to a judgment in the action, and did not affect the right of the sheriff to the possession of the property.   The circuit judge held correctly, therefore, that the nontrial of such traverse does not destroy or affect the plaintiff's right of action.

II. The testimony has been carefully examined, and we are satisfied therefrom that it tends to prove that a portion of the property in controversy, equal in value to the amount of the verdict, was not exempt by law from seizure on attachment. This will preclude us from interfering with the verdict on the ground of defect of proof. We discover no errors in the rulings of the court on objections to testimony, at least none which were not subsequently cured; and the counsel for defendants does not claim a reversal of the judgment for any alleged errors of this kind.

III. It only remains, therefore, to determine, whether there was error in any of the instructions given by the court to the jury. In order to understand the instruction chiefly complained of, it should be stated that it appears that one Adams held a note for about $133 against Crane, the attachment debtor, and that, before the attachment was executed, and on the same day, Crane sold or agreed to sell to Adams sufficient wheat out of a certain bin to pay the note. It became necessary to determine whether this wheat belonged to Crane, because, if it did belong to him, the wheat seized by virtue of the attachment was not exempt. The only testimony relative to the transaction is that of the defendant *Bell*, who testified as follows: "Crane had sold some wheat in a bin, before attachment, to Adams. Mr. Adams was to have $130 worth. He had a note, and this bin had been turned out to him, and he was to have enough to pay him; the note was $133 and some cents." Again he says: "In my presence the wheat was turned over to Adams, and a note given up. When he purchased this wheat, I saw the note figured up." "The wheat in the bin was turned over to Albert Adams; he lived at Evansville. That note was due some time the fall or winter before. I first heard of the note about a month before the attachment. Adams spoke to me about it, and asked me if Crane was good for it. I suffered Crane to clean up the wheat. After it passed into Adams' hands, it passed into mine. He said he was a good

ways off, and couldn't attend to it, so he wanted me to attend to it; so I took it,.and gave him my note. Crane's note was for $133. I bought the bin of wheat with the understanding that if there was more than enough to pay my note of $133 to Adams, it was to be Crane's. I let Crane clean up and carry it off, and took the figures he brought back as to amount."

At the request of the plaintiff, the court gave the following instruction: "If the jury find that as to the wheat claimed by defendants to have been turned over to Adams, the agreement between Crane and Adams, concerning the same, was, that Crane was to keep it in his possession. clean and market enough of it to pay Adams the amount of his claim, and pay said claim from moneys so obtained, such·a contract is not one of sale, and the title to such wheat remained in Crane."

As a proposition of law, the instruction is clearly correct. But it is urged that there is no testimony tending to prove that Crane and Adams made any agreement of the character mentioned in the instruction, and that the tendency of the instruction was to mislead the jury to the prejudice of the defendants. It may fairly be inferred from the testimony, that all of the agreements in relation to this wheat, made between Crane and Adams, Adams and *Bell* and *Bell* and Crane, were made at the same time, and constituted but a single transaction. In the absence of more direct proof on the subject, we think that the court might properly assume that there was some testimony tending to show that a contract of the character mentioned in the instruction was made between *Bell* and Crane, in the first instance, if not between Adams and Crane. It is entirely immaterial whether *Bell* or Adams was the party to such contract with Crane. The same results would follow·in either case. Had the name of *Bell* been used in the instruction instead of that of Adams, the instruction would have been faultless. It is not perceived how the error (if it be an error) could have misled the jury to the prejudice of the defendants.

The instructions are quite lengthy, and the defendants have

excepted to each paragraph thereof, whether the same is adverse to them or in their favor. The great majority of these exceptions are evidently not relied upon to reverse the judgment. They are not alluded to, or only barely mentioned, in the brief of counsel for defendants. The most of the propositions of law laid down by the court and thus excepted to, are correct statements of elementary principles, which are perfectly well settled, and concerning which there is no room for controversy. Under these circumstances, it is deemed unnecessary to state or discuss the instructions farther.

The judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.